**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **JUDITH FIELDER,** *et al.,* | |
| *Plaintiffs,* | |
| **v.** | **CIVIL ACTION NO.** **5:21-cv-00432-TES** |
| **SUPERIOR MASON PRODUCTS, LLC,** *et al.,* | |
| *Defendants.* | |

**ORDER
GRANTING PLAINTIFFS' MOTION FOR SANCTIONS
AND
DENYING IN PART DEFENDANTS'
PARTIAL MOTION FOR SUMMARY JUDGMENT**

Before the Court are Plaintiffs Judith and William Fielder's Motion for Sanctions [Doc. 43] and Defendants' Motion for Partial Summary Judgment [Doc. 53]. As to Plaintiffs' Motion, both parties filed briefs and supporting evidence, and the Court held an evidentiary hearing on December 13, 2022. [Doc. 51]. The Court need not wait for Plaintiffs' response to the majority of Defendants' Motion for Partial Summary Judgment, as the legal issues are clear and the positions of the parties are clearly determinable. *See* LR MD Ga. 7.7.

## BACKGROUND

### I.    Factual Background

This case arises from a motor vehicle accident that occurred on November 4,

2020. [Doc. 1, ¶ 21]. As alleged in the Complaint [Doc. 1], Michael Turner, a driver and

employee of Latium USA Trading, LLC, followed behind a large tractor while traveling

along highway GA-44. [*Id.* at ¶¶ 14, 28]. Turner then attempted to pass the tractor,

crossed the double-yellow lines, and entered the northbound lanes. [*Id.* at ¶¶ 32–33]. As

he crossed into the other lane, Hunter Willis—who was driving in the direction toward

Turner—moved to the edge of his lane to avoid a collision. [*Id.* at ¶ 37]. Following

behind Willis, Judith Fielder slowed down as well. [*Id.* at ¶ 39]. However, her change in

position caused her to collide with Willis's vehicle. [*Id.*]. As a result of the collision, Mrs.

Fielder and her husband—William Fielder, a passenger in the car—crossed the

southbound lane, left the roadway, and collided with trees along the embankment. [*Id.*

at ¶ 40].

Turner did not stop his vehicle. Instead, he continued into Jones County where

he was later stopped by an officer in Gray, Georgia—nearly 14 miles from the scene of

the accident. [*Id.* at ¶¶ 44–45]. Officers cited Turner for passing in a no-passing zone in

violation of O.C.G.A. § 40-6-46. [*Id.* at ¶ 54]. Turner did not appear for his court date

and the state court issued a bench warrant on February 4, 2021. [Doc. 43-1, p. 3–4]. On

January 5, 2022, almost a year after the issuance of the bench warrant, and only after

Latium hired an attorney to represent him, Turner entered a guilty plea in absentia. [Doc. 43-7]; [Doc. 43-6, Turner Depo., p. 66:15–17]. Notwithstanding Turner's tardy guilty plea, Defendants nonetheless deny they did anything wrong and insist they are not liable in any way.

## II.      Procedural Background

Plaintiffs filed their Complaint on December 6, 2021. [Doc. 1].[1] Defendants filed Answers on January 14, 2022. [Doc. 13]; [Doc. 14]; [Doc. 15]. Thereafter, the parties embarked on discovery, with a discovery end-date of November 16, 2022. [Doc. 31]. On September 14, 2022, the Court held a telephone conference to address discovery disputes. [Doc. 29]. During the conference, the parties expressed difficulty scheduling depositions for certain parties, as well as missing documents that Plaintiffs requested from Defendants. [*Id.*]. The Court ordered the parties to conduct depositions the next week using the Court's jury room, and to file discovery status reports. [*Id.*]; [Doc. 40]; [Doc. 41].

On October 10, 2022, Plaintiffs filed the instant Motion, seeking sanctions for spoliation of evidence. [Doc. 43]. In that Motion, Plaintiffs contend that Defendants failed to preserve: (1) the driver's electronic logging device ("ELD"), and other

---

[1] On November 25, 2020—three weeks after the wreck, and a year before commencing suit—counsel for Plaintiffs sent a spoliation letter to Defendants. [Doc. 43-21]. Counsel for Willis, who filed his own action, also sent a spoliation letter on November 12, 2020—eight days after the accident. [Doc. 43-20].

federally-mandated logs; (2) "subject trip documents";[2] and (3) drug and alcohol test results from the day after the accident. [Doc. 43-1, pp. 5–6].

## DISCUSSION

### I.  Spoliation[3]

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Alston v. City of Darien*, 750 F. App'x 825, 835 (11th Cir. 2018) (per curiam). The moving party bears the burden of proving spoliation. *Lamb v. Outback Steakhouse Fla., LLC*, No. 1:19-CV-150 (LAG), 2021 WL 4507521, at *5 (M.D. Ga. Sept. 30, 2021). To carry that burden, the moving party must show: "(1) the missing evidence existed at one time; (2) the spoliating party had a duty to preserve the evidence; and (3) the evidence was crucial—not just relevant—to the moving party's ability to prove her case." *Id.* (internal citations omitted).

### a.  Pattern of Evasion

Before reviewing the elements of spoliation, the Court must go through Defendants' troubling discovery patterns. First, Defendants received requests for

---

[2] Plaintiffs contend these documents include: a shipping manifest, documents outlining a driver's responsibilities, a driver's checklist, a "DIFOT Log" to record inventory/delivery completion, an expense report sheet, a mileage slip, and proofs of delivery executed by customers. [Doc. 43-1, p. 5].

[3] To be clear, the Court does not blame Defendants' counsel for any of the actions taken by his clients. From all accounts, counsel has gone above and beyond what should be required of an attorney, including making a trip to Birmingham to oversee the search for additional evidence.

production and interrogatories on June 23, 2022, with a response deadline of 30 days following the date of service. [Doc. 43-22].[4] In their August 2, 2022, responses, many of the requested documents at issue were not produced. Indeed, Defendants didn't produce a single one of the documents in dispute in this Motion, even though Latium's representative testified that he pulled together several of the documents and turned them over to "upper management." [Doc. 43-14, Hairston Depo., pp. 56:21–60:7].

Plaintiffs' counsel then noticed a deposition for Turner. [Doc. 43-6]. The day before that deposition, Turner supplemented his interrogatory responses and included—for the first time—that he took a drug test the day following the accident. [Doc. 43-31].

Additionally, Latium's amended responses to Plaintiffs' requests for production claimed that no records of duty status or daily logs existed for Turner around the time of the accident. [Doc. 43-25, ¶ 7]. But, we know that's not true. One simple search of the log portal produced a record of duty status for Turner on the day of the accident. [Doc. 52-9]. Granted, these reports show that Turner was off duty on the day of the accident[5]; however, saying (under oath) that no records exist and then later producing the very

---

[4] Plaintiffs' First Request for Production included, among other things: (1) "any and all trip and/or operational documents"; (2) "any and all driver's records of duty status or driver's daily logs"; and (3) "any and all data, reports, or other [GPS information]." [Doc. 43-23].

[5] Defendants claim that the equipment in Turner's truck must have malfunctioned and that is the reason for the incorrect data showing that Turner didn't work at all when the accident occurred. Defendants have pointed to no other employees who suffered a similar malfunction during the relevant time frame.

records (albeit with patently untrue information) cannot be readily squared. Indeed, the records show that Anthony Hairston—Latium's Transportation Manager in Birmingham—printed the report on "12/8/2022"—months after Plaintiffs initially requested the documents[6]. [*Id.*].

In that same troublesome vein, Defendants chose to wait and produce some documents only while Plaintiffs were literally in the middle of a witness deposition. For example, Defendants produced the results from a prior drug test—unrelated to the accident in question—during Brian Fabian's personal-capacity deposition. But after discovery closed, they produced—for the first time—a copy of the drug/alcohol test results from November 12, 2020 [Doc. 52-7], the only post-accident drug test Defendants contend Turner took.

During Latium's Rule 30(b)(6) deposition—for which it designated its President, Brian Fabian—the evasion and misleading continued. Fabian was clearly unprepared for numerous topics that Plaintiffs properly noticed. *See* [Doc. 50-1]. Indeed, Fabian insisted that other people within Latium would be better suited to answer questions regarding certain topics. But Latium didn't designate those individuals, it designated Fabian. [Doc. 50, Fabian 30(b)(6) Depo., p. 38:2:5]. Fabian didn't even discuss those issues with the individuals at Latium who would know the relevant information in

---

[6] The documents produced also note that the data is only good for the previous 15 days. Records produced on employees other than Turner clearly demonstrate that isn't true either.

preparing for the 30(b)(6) deposition, leaving the distinct impression that he intentionally remained ignorant on those topics. [*Id.* at p. 42:10–20].

The proverbial cherry on top comes on December 9, 2022—four days before the hearing on the instant motion—when Defendants produced, for the first time, logs showing Turner's status as "off duty" on the day of the accident. [Doc. 52-9]. As discussed above, these records clearly dispute Defendants' prior position that no records existed. And those records are clearly incorrect.

Defendants offer no logical or practical reason these records weren't disclosed earlier. To be clear, Hairston walked the Court through his process of finding the records—a simple search of the logging portal magically produced what couldn't be found before. These records came 169 days after Plaintiffs first requested the documents; 80 days after Defendants supplemented their own responses and disclosures; and 23 days after the close of discovery. Defendants simply have no excuse.

### b.   <u>Existence of the Evidence</u>

Turner testified that he turned in his paperwork, including federally-mandated logs, to Latium upon his return to Birmingham, Alabama, the day following the accident. [Doc. 43-6, Turner Depo., pp. 40:13–42:11]. Indeed, Anthony Hairston—Latium's Transportation Manager in Birmingham—testified that he pulled the logs from the ELD portal, gathered the relevant trip documents, and turned them over to members of "upper" management. [Doc. 43-14, Hairston Depo., pp. 56:21–60:7].

However, when Latium "tried" to find the documents later, the documents had mysteriously disappeared. [Doc. 50, Fabian 30(b)(6) Depo., pp. 36:3–5; 72:11–15].

Defendants' main argument is that the documents do exist—but the contents are inconclusive. Pointing to the documents Defendants turned over on December 9, 2022—a mere four days before the hearing on this Motion—they argue that Turner's GPS and ELD machines must have malfunctioned. The logs they produced show that Turner was "off-duty" the entire day on November 4, 2020. [Doc. 52-9]. However, Turner clearly worked that day. He received a citation in the company truck in Gray, Georgia. But, Defendants embarrassingly contend that these inconclusive results show that they did not spoliate the logs or trip documents.

Those arguments fail for a few reasons. First, it seems quite convenient that Turner's (and apparently only Turner's) GPS and ELD malfunctioned on the day of the accident. Indeed, other drivers' ELD and GPS machines worked perfectly that day. [Doc. 52-10]. Even Turner's truck GPS was able to follow his path from Birmingham to Georgia. [Doc. 52-8]. So ,we know Turner worked that day.

Hairston also testified that it is company policy for drivers involved in accidents to take a post-accident drug test immediately. [*Id.* at p. 27:11–13].[7] Turner testified he

---

[7] Interestingly, Hairston testified in his deposition that he never saw any results from a drug or alcohol test for Mr. Turner. [Doc. 43-14, Hairston Depo., p. 28:6–8 (Q: "So you've never seen the drug and alcohol testing for Mr. Turner, correct?" A: "I have not.")]. However, in the hearing on the instant Motion, Hairston testified that he called the clinic that conducted the test and asked them to send over the results because Turner failed to give them to him. He testified that the clinic then emailed him the results.

did take that test "the next day," following the accident. [Doc. 43-6, Turner Depo., p. 121:16–21]. He testified that his screening occurred at "American Family Care." [*Id.*]. Turner told the same story in his Response to Plaintiffs' First Interrogatories, where he again confirmed that he took a drug/alcohol test the next day at "Americus Family Care." [Doc. 43-31, ¶ 14].

On November 22, 2022—four days *after* the close of discovery—Defendants disclosed, for the first time, a drug/alcohol test that Turner took on November 12, 2020—eight days after the accident—at Occupational Health Clinics in Birmingham. [Doc. 52-7]. Defendants claim that is the sole drug/alcohol test that Turner took—he simply didn't remember when he took it. However, the significant inconsistencies between Turner's sworn testimony, Hairston's testimony, and the actual test results give the Court considerable concern. Indeed, the fact that Defendants waited to disclose the results after the close of discovery suffices to raise suspicions.

Regardless, the Court easily concludes that the evidence did exist at some point.

### c.   <u>Duty to Preserve</u>

Defendants owed Plaintiff an obligation to preserve such evidence for three reasons. First, the evidence shows that they were aware of the accident, therefore litigation was "reasonably foreseeable." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009). Indeed, the evidence shows that Hairston knew about the accident— and injuries arising from it—the day following the wreck. [Doc. 43-14, Hairston Depo.,

pp. 24:23–25:4]. Defense counsel's privilege log and other communications also show that within days following the wreck, they discussed the accident with Defendants and others involved. [Doc. 43-18, p. 1]; [Doc. 43-19]. Therefore, Defendants knew that litigation was reasonably foreseeable. Not only that, they knew litigation was imminent—such that they began preparing for it themselves. Even more, Defendants reported the accident to their insurance carrier, who then began an investigation. [Doc. 50, Fabian 30(b)(6) Depo., p. 85:20–21].

Second, both Plaintiffs and Willis sent Defendants spoliation letters reaffirming their duty to preserve evidence related to the accident. [Doc. 43-20]; [Doc. 43-21]. The letters were sent on November 12, 2020, and November 25, 2020, respectively. [*Id.*]. Clearly, "[a] spoliation letter triggers a duty to preserve by putting a party on notice of potential litigation." *Stanfill v. Talton*, 851 F. Supp. 2d 1346, 1363 (M.D. Ga. 2012).

Third, Federal Motor Carrier Safety regulations require Defendants to maintain these logs and records for a period of at least 6 months. 49 C.F.R. § 395.8. Indeed, if the GPS did in fact malfunction, regulations required Defendants to record that malfunction within eight days. 49 C.F.R. 395.34. Defendants did not do that. To be sure, Defendants didn't allege a GPS malfunction until the hearing on this Motion.

Notwithstanding its privilege log showing communications about the accident within a week of the accident, Defendants stubbornly argue that they only learned of

the accident when Plaintiffs filed their Complaint. [Doc. 43-16, ¶ 8].[8] However, as outlined above, ample evidence clearly shows that Defendants knew of the accident and the impending litigation well before Plaintiffs served the with their Complaint.

The Court finds that Defendants had a duty to preserve the evidence in question.

### d.    Cruciality of Evidence

Defendants next argue that the evidence in question is not crucial to Plaintiffs' case. The Court disagrees. Defendants dispute liability. [Doc. 44, p. 2]. Therefore, the information requested is crucial to Plaintiffs' ability to prove their case. Indeed, Plaintiffs allege that Turner violated federal service hours regulations. [Doc. 1, ¶¶ 70–76]. It is nearly impossible for Plaintiffs to prove that without logs and data regarding Turner's hours on the days and week surrounding the accident. Similarly, any drug/alcohol test taken the day after the accident is crucial to Plaintiffs' claims, too. Put simply, if Defendants didn't dispute liability, this analysis would be different. However, that's not the case. Because liability is a question left for the jury, the evidence in question is clearly crucial to Plaintiffs' case.

Accordingly, the Court finds that spoliation occurred. The only remaining question is the appropriate sanction.

---

[8] In Latium's Responses to Plaintiffs' First Interrogatories, Latium alleged it "learned of incident [*sic*] that is the subject of the Complaint in this matter when it was served with a copy of the Complaint and Summons." [Doc. 43-16, ¶ 8]. Based on Defendants' own evidence, that simply cannot be true.

II.   **Sanctions**

If a court concludes spoliation occurred, it must then determine the appropriate

sanction. To do that, courts consider the following factors:

> (1) whether the [moving party] was prejudiced as a result of the destruction
> of evidence; (2) whether the prejudice could be cured; (3) practical
> importance of the evidence; (4) whether the [spoiling party] acted in good
> or bad faith; and (5) the potential for abuse if expert testimony about the
> evidence was not excluded.

*Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). In the end, spoliation

sanctions are intended to "prevent unfair prejudice to litigants and to insure the

integrity of the discovery process." *Flury*, 427 F.3d at 944; *see also Gratton v. Great Am.*

*Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999).

Each factor weighs in favor of sanctions.[9] First, Plaintiffs have clearly been

prejudiced. Notwithstanding the missing evidence, Defendants continuously cause

evidence to slowly trickle in—even in the days leading to the hearing on this Motion.

That alone is enough to prejudice Plaintiffs. Plaintiffs' counsel also received numerous

documents on the eve of depositions, which prevented counsel from effectively and

fully preparing for the depositions. Indeed, Plaintiffs' counsel didn't have the

opportunity to depose anyone based on the documents received preceding the hearing

---

[9] Because the evidence does not relate to expert testimony, the Court does not consider the fifth factor.

on this Motion.[10] Additionally, based on the discussion above, Plaintiffs' claims rely heavily on the information that Defendants failed to provide. Therefore, Plaintiffs face clear prejudice.

While Plaintiffs' counsel has worked diligently, most of the prejudice cannot be adequately cured. The Court can allow for additional depositions, however that does not make the missing documents reappear. Also as outlined above, the evidence is of practical importance. To be sure, the evidence in question goes directly to Plaintiffs' claims. Therefore, the evidence is crucial and practically important.

The final element regards the good or bad faith of Defendants. To find bad faith does not require a display of ill-will or malice. *Lamb*, 2021 WL 4507521, at *7. Indeed, "purposely allowing evidence to be removed from one's possession alone can constitute bad-faith spoliation." *Id.* Awareness of the need for the evidence, the duty to preserve it, and then allowing that evidence to disappear is enough to sustain sanctions. *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1185 (11th Cir. 2020).  A pattern of disregard for the discovery process and timely disclosure of evidence is also indicative of bad faith. *See Hornady v. Outokumpu Stainless USA*, 572 F. Supp. 3d 1162, 1194 (S.D. Ala. 2021).

Here, the Court finds that Defendants have acted in bad faith throughout the discovery process. The pattern of delay and obfuscation leaves the Court with a clear

---

[10] The Court offered Plaintiffs' counsel the opportunity to do so even though discovery closed. Counsel asked the Court for time to consider that option. The Court will allow Plaintiffs' counsel the opportunity to depose witnesses relevant to the new documents **before February 1, 2023**.

conviction that Defendants have deliberately tried to evade discovery. Even at the hearing on this Motion, Hairston admitted that there are additional emails that haven't been turned over to Plaintiffs. Defendants have had over seven months to participate in discovery and relay information to Plaintiffs. They have failed to do that to the standards required of litigants.

The Court, in making its final determination, may weigh the credibility of the witnesses, including their personal credibility and the manner in which they testified. *See In re Delta/Airtran Baggage Fee Antitrust Litig.*, No. 1:09-MD-2089-TCB, 2015 WL 4635729, at *14 n.13 (N.D. Ga. Aug. 3, 2015) (noting that "on a motion for sanctions, unlike one for summary judgment, credibility determinations ae not reserved for the jury. . . [and] witness credibility is critical to the resolution of a motion for spoliation sanctions[.]"); *Nuvasive, Inc. v. Absolute Med., LLC*, No. 6:17-CV-2206-ORL-41GJK, 2021 WL 3008153, at *6 (M.D. Fla. May 4, 2021), *reconsideration denied*, No. 6:17-CV-2206-CEM-GJK, 2021 WL 7184539 (M.D. Fla. Oct. 25, 2021).

The Court heard from Hairston and Fabian at the hearing on this Motion. After hearing from the witnesses, the Court does not find them credible based on continued inconsistencies and illogical responses. Few parts of the story make sense, except this: Defendants have evaded discovery and purposefully sandbagged Plaintiffs with late disclosures and incomplete responses.

Accordingly, the Court finds that sanctions are appropriate. In determining the

appropriate sanction, a court may: (1) dismiss the action or enter default against a defendant; (2) exclude the relevant testimony; or (3) give a jury instruction on spoliation of evidence which raises a presumption against the spoliator. *Flury*, 427 F.3d at 945. In this case, the facts do not rise to the level necessary to strike Defendants' Answers. On these facts, an adverse jury instruction is appropriate. However, the Court will decide on the exact language of such an instruction at a later time.

Accordingly, the Court **GRANTS** Plaintiffs' Motion for Sanctions [Doc. 43].

The Court now turns to Defendants' rather bold Motion for Partial Summary Judgment [Doc. 53] as it relates to punitive damages and legal fees, which was filed three days following the hearing on Plaintiffs' Motion for Sanctions. *See* [Doc. 51]; [Doc. 53].

### III.   Defendants' Partial Motion for Summary Judgment

#### a.   Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *U. S. v. Four Parcels Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the

initial responsibility of informing the court of the basis for its motion." *Four Parcels*, 941 F.2d at 1437. The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A). "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels*, 941 F.2d at 1437–38 (quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is, point out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 1437– 38 (quoting *Celotex*, 477 U.S. at 324) (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*,

477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's

position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Further, where a party fails to address another party's assertion of fact as required by

Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for

the purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences

from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for
> trial. Rather, on summary judgment, the district court must accept as fact
> all allegations the [nonmoving] party makes, provided they are sufficiently
> supported by evidence of record. So[,] when competing narratives emerge
> on key events, courts are not at liberty to pick which side they think is more
> credible. Indeed, if "the only issue is one of credibility," the issue is factual,
> and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted).

Stated differently, "the judge's function is not himself to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for

trial." *Anderson*, 477 U.S. at 249. "The evidence of the [nonmovant] is to be believed, and

all justifiable inferences are to be drawn in his favor." *Id.* at 255. And "if a reasonable

jury could make more than one inference from the facts, and one of those permissible

inferences creates a genuine issue of material fact, a court cannot grant summary

judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at

1263.

  **b.** <u>Discussion</u>

  Defendants ask the Court to grant summary judgment as to Plaintiffs' (1) claims against U.S. Fire Insurance Company,[11] (2) punitive damages claims, and (3) its O.C.G.A. § 13-6-11 claim for attorneys' fees and expenses of litigation. The Court denies the Motion in part for one simple reason: any reasonable jury could easily conclude that Plaintiffs could recover both punitive damages and attorneys' fees.

  First, punitive damages may be awarded in a tort action when "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). In this case, there is certainly evidence from which a jury could decide that Turner acted with "conscious indifference to the consequences." *Fowler v. Smith*, 516 S.E.2d 845, 848 (Ga. Ct. App. 1999). Indeed, looking at the evidence in a light most favorable to Plaintiffs, the record shows that he crossed a double-yellow line, drove toward other vehicles illegally, caused the accident, fled the scene and then lead a witness on a multi-mile trip to another county. [Doc. 43-3, Ryan Depo., p. 12:7–13]. That evidence could allow a jury to conclude that Turner's actions constituted "grossly indifferent conduct."

---

[11] The Court does not decide this issue in this Order. Plaintiffs should file a response as to this issue within 14 days of this Order.

*Rosser v. Atlanta Coca-Cola Bottling Co.*, 291 S.E.2d 109, 111 (Ga. Ct. App. 1982), *rev'd on other grounds*, 250 Ga. 52, 295 S.E.2d 827 (1982).

Again, Turner left the scene of the accident and drove away without speaking to anyone, including law enforcement, and never returned to answer for his citation, causing Putnam County courts to issue a bench warrant for his arrest. [Doc. 43-3, Ryan Depo., p. 21:14–21]. This evidence clearly provides the Court a sufficient basis to send the question of punitive damages to a jury. *See Langlous v. Wolford*, 539 S.E.2d 565, 568 (Ga. Ct. App. 2000) ("[S]uch act of leaving the scene of a collision without even speaking to the other party, as mandated by statute, was an intentional and culpable act; such conduct demonstrated a conscious indifference to the consequences and an entire want of care as to the victim's well-being, permitting the jury to find that such conduct was of an aggravated and indifferent nature for purposes of imposing punitive damages."); *see also Bellamy v. Edwards*, 354 S.E.2d 434 (Ga. Ct. App. 1987); *Vannes v. Smith*, No. 3:14-CV-9 (CAR), 2016 WL 1260703, at *12 (M.D. Ga. Mar. 29, 2016).

Further, Defendants contend that the punitive damages should be capped at $250,000 because there is no evidence "Mr. Turner was under the influence of alcohol or drugs to the degree that his judgment was substantially impaired at the time of the . . . incident." [Doc. 52-2, p. 16]. Without replowing that ground, Plaintiffs cannot offer that evidence because—at best—Defendants failed to timely order Turner to take a drug test. At worst, Defendants destroyed the drug test taken the day after the accident and

had him take another one a week later. The jury can decide what they believe after

receiving the Court's spoliation instruction. At this procedural point, the Court declines

to grant Defendants' motion. It reserves the right to reconsider it after hearing the actual

evidence and if the jury reaches that question in a bifurcated trial.

As to Plaintiffs' claim for legal fees under § 13-6-11, a jury may award fees if it

finds any of the following: "the defendant has acted in bad faith, has been stubbornly

litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13-6-

11. Here, a jury could certainly find that Defendants acted with bad faith or caused

Plaintiffs unnecessary trouble and expense. Indeed, it is only in the "rare case where

there [is] absolutely no evidence to support the award of expenses of litigation would

the trial court be authorized to grant summary adjudication on such issues." *Am. Med.*

*Transp. Grp., Inc. v. Glo-An, Inc.*, 509 S.E.2d 738, 741 (Ga. Ct. App. 1998). This is not

among those rare cases.

While it is true that any statutory basis for the award of attorneys' fees and

expenses must "relate to defendant's act in th[e] transaction itself prior to this

litigation," there is ample evidence for the jury to consider. *Driggers v. Campbell*, 543

S.E.2d 787, 791 (Ga. Ct. App. 2000). Again, to be clear, a reasonable jury could easily

decide that Turner left the scene of the accident, failed to appear for his bench trial in

the matter, and failed to take (or at least disclose) a federally-mandated drug test within

the appropriate time. Such evidence easily gives the Court enough to send these

20

questions to a jury. *See Lamar Co. v. Goshen Springs Prop. III, LLC*, No. 1:20-cv-04246-VMC, 2022 WL 12194182, at *10 (N.D. Ga. Oct. 5, 2022); *Hughey v. KTV's Transp., LLC*, No. 1:19-cv-03499-SDG, 2022 WL 902841, at *3 (N.D. Ga. Mar. 28, 2022).

## CONCLUSION

Based upon the foregoing, the Court **GRANTS** Plaintiffs' Motion for Sanctions [Doc. 43]. The Court finds that an adverse jury instruction is the appropriate sanction. The Court will determine at a later date the exact language of the jury instruction, with appropriate input from the parties.

The Court **DENIES in part** Defendants' Motion for Partial Summary Judgment [Doc. 53] as it relates to punitive damages and legal fees under O.C.G.A. § 13-6-11. Plaintiffs shall respond to Defendants arguments regarding their direct action against U.S. Fire Insurance Company within 14 days of this Order.

The parties are **ORDERED** to mediate this case before February 1, 2023, and file a report outlining the results within 3 days of completing mediation. Contingent on the outcome of mediation, trial is scheduled to begin on February 21, 2023. The Court will schedule a pre-trial conference at a later date.

Brian Fabian, President of Latium USA Trading, LLC, is **ORDERED** to file a discovery status update with the Court every 2 weeks. In that report, Fabian will describe—**under oath**—any and all attempts to find and turn over all relevant documents, materials, logs, etc., including actions taken by himself and those taken by

employees, third-parties, or any other individual at his direction. These reports shall include the results of such efforts. Each report must be specific and thorough—the Court will not accept generic or boilerplate language. The first report must be filed with the Court two weeks after the date of this Order.

**SO ORDERED**, this 20th day of December, 2022.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**